**STATE OF MAINE et al., Petitioners,**

**v.**

**CIVIL AERONAUTICS BOARD,**
**Respondent,**

**Delta Air Lines, Intervenor.**

**No. 74–1413.**

United States Court of Appeals,
First Circuit.

Aug. 13, 1975.

Joseph B. Goldman, Washington, D. C., with whom Morison, Murphy, Abrams & Haddock, Washington, D. C., was on brief, for petitioners.

Peter R. Steenland, Jr., Atty., Civ. Aeronautics Bd., with whom Glen M. Bendixsen, Associate Gen. Counsel, Div. of Litigation and Research, Thomas E. Kauper, Asst. Atty. Gen., Howard E. Shapiro, Atty., Dept. of Justice, and Thomas J. Heye, Gen. Counsel, Civ. Aeronautics Bd., were on brief, for respondent.

Frank F. Rox, Atlanta, Ga., with whom Robert Reed Gray and Hale Russell & Stentzel, Washington, D. C., were on brief, for intervenor, Delta Air Lines, Inc.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This appeal challenges the deletion by the Civil Aeronautics Board (Board) of the municipalities of Bar Harbor and Rockland, Maine, from Delta Airline's certificate of public convenience and necessity. These orders were only two of many that resulted from the *New England Service Investigation,* which entailed a reevaluation of air traffic needs throughout New England. The deletions challenged here were the product of Delta's request and Maine's counter proposal that a new airline, Air New England, be certificated, or in the alternative, that Delta continue its certificate obligation, but that it be suspended, as it had been for the previous three years, in the two locations in question, so long as the carrier guaranteed replacement service under a suspension/substitution arrangement.[1]

Although many decisions affecting various New England cities were made in the proceeding, the Board's attention had been repeatedly drawn to the special circumstances of the seasonal certificate obligation to Bar Harbor and Rockland. The administrative law judge found that the suspension/substitution arrangement should be continued at these two localities. On review, the Board unanimously rejected many of the administrative law judge's recommendations, but divided, three to two, on the issue of the ruling allowing deletion of all service (thus pre-

---

1. In 1972 Delta merged with Northeast, taking over its certificate obligations in New England. Northeast had been certificated to serve Rockland in 1946 and Bar Harbor in 1950. In June, 1969, after Northeast entered into arrangements with commuter carriers to provide replacement service, the Board authorized a suspension at Bar Harbor and a few months later at Rockland on the condition that the replacement commuter service continue.

Under a suspension/substitution arrangement, the carrier continues to have certificate responsibility but its obligation to provide that service itself is suspended so long as it secures the substitute service of a commuter carrier. Delta's obligation has been limited to providing this back-up guaranty during the summer season.

cluding a suspension/substitution arrangement) for Rockland and Bar Harbor and some other New England cities which have not appealed. In addition, Maine's petition for rehearing again spotlighted this issue.[2]

The crux of Maine's appeal is that the Board failed to weigh the public convenience and Delta's burden in continuing the suspension/substitution arrangement, and therefore improperly balanced the benefits and burdens of deletion. Instead, Maine argues, the Board considered only whether benefits of certification, with Delta actually providing the service to the points in question, outweighed the anticipated financial burden on Delta in providing such large aircraft service. The absence of supported findings that suspension/substitution was not in the public interest, Maine contends, not only violates relevant statutory requirements but constitutes an arbitrary and unique exception to the Board's own precedents and practice.[3]

The Board asserts that deletion was consonant with previously articulated policy. It argues that its limited focus on the alternatives of full certificated service or none is statutorily authorized where the carrier seeks deletion.[4] The Board argues that it is not obligated to address any possible arrangement between the extremes: specifically, that it is not obligated to negate the public convenience provided by a suspension/substitution arrangement.

The administrative law judge made the following evaluation of the public convenience in continued Delta certification responsibility for service at Bar Harbor and Rockland with the suspension/substitution arrangement. He found that while performance of the commuter carriers in Rockland and Bar Harbor had been reliable, frequent and generally an improvement on service previously provided by Northeast, an important concern which the "Board itself has recognized [is] that commuter carriers as a class, by their very nature, function 'at a relatively high financial risk, and must have the freedom to exit from markets which prove to be a drain on their resources.' Order 72–7–61, July 18, 1972. Moreover, the record contains references to a number of New England commuter carriers who have ceased oper-

2. The Board's claim that Maine has at any time acquiesced in the deletion of Rockland and Bar Harbor from Delta's certificate has no support in the record. Maine has not, however, appealed the failure to certificate Air New England for these routes.

3. Maine also argues that Bar Harbor and Rockland suffered discriminatory treatment. Insofar as this argument deals with factual comparisons with cities where deletion was granted, we need not reach it.

4. The Board asserts that Maine ignores the distinction between an application under the Federal Aviation Act of 1958, § 1371(j) and one under § 1371(g).

§ 401(j), 49 U.S.C. § 1371(j), governs abandonment and temporary suspension: "The Board may, by regulations or otherwise, authorize such temporary suspension of service as may be in the public interest." Orders under this provision are permissive and temporary. The Board frequently proceeds by non-hearing procedures. Mutual requests of a commuter carrier and suspended certificated carrier are also frequently approved without hearing.

Authority to modify, suspend or revoke a certificate is governed by § 401(g): "The Board upon petition or complaint . . . , after notice and hearings, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require." Under this provision, full hearing must be provided.

In an application under § 401(j) for temporary suspension there is no claim made by the certificated carrier that permanent deletion is warranted or that the carrier is sustaining an insupportable burden by underwriting certificated service. We agree, then, with the Board's assertion that § 401(j) petitions are distinguishable from petitions for deletion, which specifically raise the issue of the cost to carriers of continued service. But this does not mean that the mere presence of a hearing precludes review or, as the Board may imply, that the carrier's interest is the most significant factor in determining the public necessity and convenience in continued certificate responsibility under § 401(g).

ation . . . ." The administrative law judge found that the performance of the commuters had been good, increasing traffic in Rockland between 1968 and 1971 fivefold and increasing traffic at Bar Harbor by 143 per cent between 1969 and 1971, but that continued support in the form of joint fares and the guarantee of replacement service by Delta was warranted. He recommended the application to these operations of Delta's joint fares, observing that New England fares on commuter carriers were, on the average, higher than local service fares throughout the country, and that there would be substantial differences in through fares ranging up to 24 dollars on a one-way flight if Delta were not required to provide joint fares.

The administrative law judge rejected any claim of excessive burden on Delta, finding that the standards applied in other deletion cases did not apply to Delta: "In those cases the carriers were seeking the deletion of points they had long held, where changing conditions over which they had no control had altered the situation that existed when they received the route. Delta acquired Northeast only about a year ago. In doing so, it voluntarily assumed all of Northeast's certificate obligations. The factors upon which Delta relies in support of its deletion existed at the time it acquired the route and it must be presumed to have known about them." He further found that Delta was an unusually lucrative airline and that its merger with Northeast and assumption of valuable long-haul routes was conditioned upon assumption of service obligations in New England. The short passage of time and lack of change in circumstances were also significant. The administrative law judge was satisfied that Delta could be held to its original obligation but was being allowed the "less burdensome alternative" of giving such assistance as might be required to guaranty the operation of the commuter carrier.

The Board's only response to these findings was that Bar Harbor and Rockland do "not require and cannot support certificated air transportation . . . ." and that "the cost of Delta services at the points in question would be clearly disproportionate to the benefits conferred." The Board went on to estimate the cost to Delta of resuming service by large carrier; no estimate was made of the cost to Delta of continued suspension with the substitution arrangement. The Board's conclusion that deletion rather than suspension was called for was supported by its view that

"Since there is no reasonable prospect of a resumption of Delta's services or the introduction of any large aircraft operations at these points in the foreseeable future, deletion seems the more realistic course. It should be emphasized, however, that Delta has volunteered to provide—and has already embarked upon—a program of assistance to all New England commuters, not only those serving points on its route. Under this program . . . Delta will provide extensive ground handling and reservation services, publish joint fares with commuters in primary travel markets, and cooperate with them in joint advertising and promotional efforts."

In its response to petitions for reconsideration, the Board addressed the dissenters' argument that it cannot rest upon a finding that certificated service is not warranted but must also consider whether a community requires a combination of unregulated commuter transportation, backed up by a suspension/substitution arrangement with a certificated carrier. Its answer was that it saw no statutory obligation to do so, and that its action was in accord with some precedents where it had approved outright deletions where certificated service was not warranted, "regardless of whether [the communities] were able to support commuter operations." (Cit-

ing its order in *Service to Sedalia* and *Piedmont, Deletion of Southern Pines.*[5]) It also expressed its expectation[6] that the Bar Harbor and Rockland commuter services would continue to be provided. But, the Board, added, if the communities proved unable to support the commuter service it saw no reason for any subsidization by Delta or the air transportation network as a whole.

The court is not completely persuaded by the Board's statutory argument that the only consideration before it on a request for deletion is whether full certificated service by the carrier itself is appropriate. Section 401(g) gives authority to the Board, when it receives requests for deletion, to "alter, amend, modify, or suspend . . . in whole or in part". It seems to contemplate action along a continuum which implies that arguably supportable actions within the continuum must be recognized and addressed. Findings on such issues would seem to fall within the description of those required both by the Administrative Procedure Act, 5 U.S.C. § 557(c), and the Federal Aviation Act of 1958, 49 U.S.C. § 1485(f).

■ While such findings may well not be required where not made an issue, it would seem to us that where an existing suspension/substitution arrangement, capable of factual examination, has been brought in issue before an administrative law judge who, after balancing all relevant factors, recommends its continuance, consideration must be given to his decision. *Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 444 F.2d 841 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). Indeed, an agency decision which is lack-

ing in such reflective consideration might well be vulnerable.

Furthermore, a requirement that the Board address more than the extremes of full service or none would fill what appears to be a logical gap in the Board's analysis. In deletion proceedings Board decisions refusing or granting deletion of points served would be reviewable as well as decisions requiring suspension/substitution. But a decision not to require suspension would be rendered unreviewable by the simple expedient of not addressing that alternative. We see no purpose of the Act served by carving out such an area of unreviewable discretion. Nevertheless, we do not rest our decision on statutory grounds.

Wholly apart from the Federal Aviation Act, which admittedly is less than explicit, the past practices of the Board itself dictate our course. The Board has recognized an obligation of careful scrutiny:

"the Board will not remove a community from the national air transportation map in the absence of a showing that continued service is unnecessary, or would be unprofitable or would represent a misallocation of transportation resources . . . . In this connection, the Board has also stated that 'in the case of a community already certificated for service by a . . . local service carrier, the public interest continues to require that every effort be made to insure the accessibility of such a community to the national transportation network', *Elizabeth City, supra.*" *Frontier-Airlines, Service to Muskogee, Oklahoma,* 74–11–19, Nov. 4, 1974.

We have examined all the prior cases before the Board which have been called

---

**5.** In neither *Service to Sedalia, Missouri,* order 70–6–22, nor *Piedmont Aviation, Inc., Deletion of Southern Pines-Pinehurst-Aberdeen, North Carolina,* order 72–4–97, was there any issue raised as to the feasibility of replacement service.

**6.** The Board's "expectation" that the commuters will continue to provide adequate service is

not supported by any evidentiary findings. The Board has acknowledged the fact that small carriers are subject to substantial business fluctuations. We think no reliance can be placed on voluntary support by Delta, the continuance of which is not assured.

 

to our attention. We have eliminated cases involving approval of consensual suspension/substitution arrangements and cases in which suspension/substitution was not put in issue. In all the cases the Board explicitly and carefully addressed the issue: *Frontier Airlines, Inc., Service to Muskogee, McAlester and Paris,* Order 74–11–19; *Eastern Air Lines, Inc., Deletion of Bowling Green, Kentucky,* Order 74–7–25; *Piedmont Aviation, Inc., Deletion of Elizabeth City, North Carolina,* Order 72–4–96; *Eastern Airlines, Inc., Waycross Deletion Case,* Orders 72–5–49, 72–5–50; *Eastern Airlines, Inc., Reading Deletion Case,* Order 72–9–46; *Piedmont Aviation, Inc., Deletion of Blacksburg-Redford-Pulaski, Virginia,* Order 72–2–92; *Frontier Airlines, Inc., Deletion of Duncan, Oklahoma,* Order 72–6–33; *Eastern Airlines, Inc., Vero Beach Deletion Case,* Order 72–11–42. The Board has pointed to some cases in which deletion was granted after suspension/substitution was rejected as a viable alternative but to no case in which the parties raised the alternative of suspension/substitution and the Board refused to consider it.

 The Board asserts that it must be free to employ its expertise to establish new policies and that it cannot be forever tied to previously articulated standards. We agree. But here the indicia of reasoned analysis based on carefully weighed facts are missing. There are internal inconsistencies and a failure to clearly articulate the standard being applied. *City of Lawrence, Massachusetts* v. *CAB,* 343 F.2d 583 (1st Cir. 1965). Although an "agency's view of what is in the public interest may change, either with or without a change in circumstances . . . an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed not casually ignored . . .." *Greater Boston Television Corp.* v. *FCC,* 143 U.S.App.D.C. 383, 444 F.2d 841, 852 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). The Board has broad authority but it "also has a

duty to define and apply its policies in a minimally responsible and evenhanded way." *Distrigas of Massachusetts Corp.* v. *FPC,* 517 F.2d 761, at 765 (1st Cir. 1975).

Remanded for such further proceedings, not inconsistent with this opinion, as may be appropriate.