# United States Court of Appeals
## For the First Circuit

No. 01-1577

THOMAS J. HARRINGTON, RICHARD S. NEVILLE,
THOMAS FORDHAM, JOHN A. BIGGINS, MARK J. DURKIN,

Plaintiffs, Appellants,

v.

ELAINE L. CHAO, SECRETARY OF LABOR,
U.S. DEPARTMENT OF LABOR,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Richard G. Stearns, U.S. District Judge]

---

Before
Torruella, Lynch, and Lipez, Circuit Judges.

---

Renee J. Bushey with whom Michael A. Feinberg and Feinberg,
Campbell & Zack, P.C. were on brief for appellants.
Alan Hyde for Association for Union Democracy, Inc., amicus
curiae.
J. Matthew McCracken, Attorney, United States Department of Labor,
with whom James B. Farmer, United States Attorney, and Anita Johnson,
Assistant United States Attorney, were on brief for appellees.
Daniel J. Hall with whom DeCarlo, Connor & Selvo, Aaron D. Krakow
and Krakow, Souris & Birmingham were on brief for United Brotherhood of
Carpenters and Joiners of America and New England Regional Council of
Carpenters, amici curiae.

---

February 19, 2002

---

**LYNCH, Circuit Judge.** This case comes to us under the union-democracy provisions of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401-531 (1994 & Supp. V 1999).

Thomas Harrington, a member of the United Brotherhood of Carpenters and Joiners of America ("UBC"), alleges that the functions and purposes traditionally accorded to local unions in the New England region of the UBC are now served by the New England Regional Council. That Council, he says, must be treated as a local union and not as an intermediary body. Consequently, Harrington argues, the officers of that Council must be elected in the manner that the LMRDA prescribes for local unions, that is, by direct election by secret ballot among the union members rather than by vote of delegates who are elected from the local unions, as the UBC has chosen to do for the Council. Id. § 481(b),(d) (1994). Harrington filed a complaint with the Secretary of Labor asking her to require the Council to hold a new election as a local union. The Secretary declined for reasons stated in a brief Statement of Reasons.

Harrington sued under the LMRDA. On motion by the Secretary, the district court dismissed his suit. See Harrington v. Herman, 138 F. Supp. 2d 232 (D. Mass. 2001). Because the Statement of Reasons is insufficient to permit meaningful judicial review, we reverse the district court, vacate the Secretary's Statement of Reasons and remand the case to the district court with instructions to remand to the

-2-

Secretary. We do not now decide whether any refusal by the Secretary to bring suit as sought by Harrington would be arbitrary or capricious.

## I.

### A.

The LMRDA, 29 U.S.C. §§ 401-531, was designed "to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." Finnegan v. Leu, 456 U.S. 431, 441 (1982); see also S. Rep. No. 86-187, at 20 (1959) ("It needs no argument to demonstrate the importance of free and democratic union elections."). The LMRDA balances this purpose with the "countervailing policy recogniz[ing] that unions should be free to conduct their affairs so far as possible and the government should not become excessively involved in union politics." Reich v. Local 89, Laborers' Int'l Union, 36 F.3d 1470, 1476 (9th Cir. 1994).

Title IV of the LMRDA, 29 U.S.C. §§ 481-483 (1994), establishes minimum standards for the election of union officers. The LMRDA provides that "[e]very local labor organization shall elect its officers not less than once every three years by secret ballot among the members." Id. § 481(b). However, these direct election requirements do not apply to the selection of officers of "intermediate

-3-

bodies" of labor organizations.[1] Id. § 481(d). Instead, the Act provides:

> Officers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot.

Id. § 481(d).[2] Thus an intermediate body may choose between direct election or representative election; UBC has chosen the latter.

When a union member wishes to challenge the validity of an election, he must exhaust remedies available under the labor organization's rules, and he may then file a complaint with the

---

[1] "Labor organization," for purposes of the LMRDA, means:

> a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

29 U.S.C. § 402(i).

[2] The election of officers of national or international labor organizations is also governed by Title IV. Under LRMDA § 401, such a body must "elect its officers not less often than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot." 29 U.S.C. § 481(a).

-4-

Secretary.  Id. § 482(a).  Upon receipt of a union member's complaint, the Secretary investigates the allegations of that complaint.  Id. § 482(b).  If she determines that there is probable cause to believe that a violation of Title IV occurred and that the violation probably infected the outcome of the election, she must bring suit against the labor organization to set aside the election and to obtain a new election.  Id.; Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 472 (1968); see also Heckler v. Chaney, 470 U.S. 821, 834 (1985) (noting that § 482(b) "quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power").

B.

In 1996, the UBC, an international union, undertook a dramatic restructuring which established a new three-tier organization of dominant and subordinate UBC bodies.  The International remained at the top of the organization.  Below the International, the UBC established a group of strong regional entities, called Regional Councils.  Lastly, the numerous existing UBC locals were placed at the bottom, subordinate to both the International and the Regional Councils.  It appears that before July 1, 1996, the Regional Councils did not exist.

The New England Regional Council ("NERC") covers UBC members and subordinate UBC locals throughout Connecticut, Maine,

Massachusetts, New Hampshire, Rhode Island, and Vermont. The officers of NERC are not elected directly by local union members, but rather by a secret ballot of delegates who are, in turn, elected by the members of the local unions. The key officer of NERC is the Executive Secretary-Treasurer; he has exclusive authority to submit grievances to binding arbitration, hire or terminate NERC employees, chair the collective bargaining committees, appoint the membership of collective bargaining committees, and appoint the members of the trial committees convened to discipline union members.

Although deprived of many of their previous functions, the UBC locals subordinate to NERC remain independently chartered, have identifiable memberships, elect their own officers, and have their own by-laws. Although the locals do not negotiate collective bargaining agreements, the membership of the locals must vote to ratify the agreements. The locals hold meetings, have their own budgets and bank accounts, and collect members' dues (a substantial portion of which are then passed on to NERC). Each local is permitted to hire one clerical staff member. Grievances are administered in the early, informal stages by local stewards, but the locals cannot invoke higher levels of the grievance process, including arbitration.

Harrington, a UBC member in Massachusetts, filed a complaint with the Secretary of Labor on September 21, 1999, pursuant to 29 U.S.C. § 482 and 29 C.F.R. § 452.4 (2001), alleging that NERC was

essentially a "local" labor organization because it had assumed most of the powers and functions traditionally retained by UBC locals. Harrington contended that because NERC is a "local," it must elect its officers by direct vote of the local union members, and not by vote of delegates from the local unions, in order to comply with the LMRDA.[3]

After conducting an investigation, the Secretary concluded in a Statement of Reasons dated April 7, 2000, that NERC is an "intermediate body," not a "local," and is therefore permitted to elect its officers either by "secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot."  29 U.S.C. § 481(d).

In the Statement of Reasons, the Secretary noted that NERC's bylaws invested it with some of the powers and functions that the union's locals previously possessed, but that this was insufficient ground upon which to regard NERC as a local rather than as an intermediate body.[4] The Secretary stated that there was "no basis in the statute or legislative history for concluding that if intermediate bodies possess certain functions and powers," they lose the statutory

---

[3]     In an ironic turn of events, we were informed that Harrington was recently elected Executive Secretary-Treasurer of NERC.  This fact does not affect our disposition of the case.

[4]     The full text of the Secretary's Statement of Reasons is set forth in an appendix to this opinion.

-7-

choice of electing officers indirectly and must elect their officers directly. The Secretary concluded that because the investigation found no violation of law in the method by which NERC elected its officers, there was no basis for bringing suit against NERC.

Harrington then filed suit in United States district court challenging the Secretary's refusal to file an enforcement action. On April 10, 2001, the district court granted the Secretary's motion to dismiss, reasoning that the Secretary's decision not to initiate suit was not arbitrary or capricious. Harrington, 138 F. Supp. 2d at 235-36. Harrington promptly filed this appeal.

## II.

### A.

Harrington's principal argument is that the Secretary, in refusing to sue NERC, has retreated without explanation from her prior policies regarding the enforcement of direct election standards. Specifically, Harrington contends that the Secretary's current position is directly at odds with her established position -- as expressed in the regulations and case law -- of enforcing the direct election provisions of 29 U.S.C. § 481(b) against so-called intermediate bodies that have, in reality, assumed all of the functions of a local union. Harrington is supported by amicus curiae Association for Union

-8-

Democracy, Inc, while the UBC and NERC, acting as amici curiae, support the Secretary.[5]

The Secretary denies any inconsistency and also contends that her action is justified by the LMRDA's broad purposes, as expressed in its legislative history. Noting that the government "should be careful [not] to undermine self-government within the labor movement," S. Rep. No. 86-187 at 5, the Secretary argues that she may not decide the appropriate allocation of power between local and intermediate bodies of a labor organization. She contends further that the deference to the union's allocation of power is consistent with Congress's recognition of the fact that "in some unions intermediate bodies exercise responsible governing power." Id. at 20.

Amici the UBC and NERC argue that the Secretary's decision ultimately may be justified by the evolving nature of labor relations in the construction industry. According to the union, the construction industry has undergone increasing regionalization over the past few decades, with construction work becoming concentrated in fewer and larger employers, and employers undertaking a greater number of out-of-state projects.[6] The prior UBC organizational structure, which relied

---

[5]     The court is appreciative of the assistance ably provided by all the amici curiae in this case.

[6]     For example, the UBC says in 1992 the Census Bureau reported that 2.2 % of construction employers had 50 or more employees and were

on relatively strong locals, was ill equipped to handle the realities of employers operating on a regional scale. Thus, the union contends, the Secretary's decision to allow strong Regional Councils reflects a sensible response to prevailing market conditions. The UBC and NERC urge that a contrary result would not only impinge on internal union affairs,[7] but would also handicap their ability to deal with employers. See S. Rep. No. 86-187, at 7 (noting the committee's belief that the Act should not "weaken unions in their role as collective-bargaining agents"); see also Estreicher, Deregulating Union Democracy, 2000 Colum. Bus. L. Rev. 501, 503 (2000) (arguing that excessive regulation of internal union affairs will impose unnecessary compliance costs and

---

performing 39.6 % of the dollar value of business. Bureau of the Census, U.S. Dep't of Commerce, Pub. No. CC92-I-27, 1992 Census of Construction Industries: Industry Series: United States Summary: Establishment With and Without Payroll 12 (1995) (percentages from calculations based on statistics in table 8). By 1997, this concentration of work had increased to 2.6 % of employers having 50 or more employees who were performing 42.1 % of the total dollar value of construction business. U.S. Census Bureau, U.S. Dep't of Commerce, Pub. No. EC97C23S-IS, 1997 Economic Census: Construction: Subject Series: Industry Summary 12 (2000) (percentages from calculations based on statistics in table 5).


[7]    The UBC also points to practical detriments for those individuals who wish to run for election of requiring direct election of council members. Because the electorate would expand from only his or her own local to the entire 26,000 New England membership, both mailings and face to face campaigning would be more onerous. It estimates the cost of a single mailing at $9,000 and posits that members would be discouraged from running.

weaken the unions' ability to engage effectively in "economic struggle with employers").

### III.

The Secretary's decision under Title IV of the LMRDA not to bring an action against a labor organization for violation of 29 U.S.C. § 481 is subject to only narrow judicial review. In <u>Dunlop</u> v. <u>Bachowski</u>, 421 U.S. 560 (1975), the Supreme Court held that the Secretary's decision is subject to review under the Administrative Procedure Act for whether her decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." <u>Id.</u> at 565 (quoting 5 U.S.C. § 706(2)(A) and citing 5 U.S.C. §§ 702, 704). The Supreme Court said that "[e]xcept in what must be the rare case, the court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." <u>Id.</u> at 572-73.

Only the Secretary may bring such a suit for post-election remedies. <u>Local No. 82, Furniture & Piano Moving</u> v. <u>Crowley</u>, 467 U.S. 526, 544 (1984). There are two principal

-11-

justifications for this exclusivity: "(1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted." Trbovich v. United Mine Workers, 404 U.S. 528, 532 (1972). Although Congress mandated that the Secretary bring suit upon a finding that probable cause exists that a violation took place, the Supreme Court has implied that the Secretary may decline to bring suit if the Secretary is not convinced that the "violation . . . probably infected the challenged election." Bachowski, 421 U.S. at 570 (quotation marks and emphasis omitted); see also Shelley v. Brock, 793 F.2d 1368, 1373 (D.C. Cir. 1986).

The Statement of Reasons enables a court to determine whether the Secretary's refusal to act is contrary to law. Bachowski, 421 U.S. at 568-71. The courts' ability to review the Secretary's decision, however, is not the only justification for requiring the Secretary to provide an adequate statement of reasons. The Supreme Court in Bachowski stated that Congress intended that the Secretary provide the complaining union member with a reasoned statement as to why she determined not to proceed. And the Court noted that Congress intended to compel

the Secretary in her Statement to "cover the relevant points and eschew irrelevancies," thereby assuring "careful administrative consideration." Id. at 572.

This case raises two significant questions not directly addressed in Bachowski. The first is whether the Secretary has departed from her prior interpretation of the Act, codified at 29 C.F.R. § 452.11 (2001). The second is whether the Secretary, if she is employing the analysis contained in 29 C.F.R. § 452.11, is doing so in a manner consistent with Donovan v. National Transient Division, International Brotherhood of Boilermakers ("Boilermakers"), 736 F.2d 618 (10th Cir. 1984), and Schultz v. Employees' Federation of the Humble Oil & Refining Co. ("Humble Oil"), No. 69-C-54, 1970 U.S. Dist. LEXIS 12288 (S.D. Tex. Mar. 31, 1970).

As to the first question, the regulation provides that

> The characterization of a particular organizational unit as a "local," "intermediate," etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself.

29 C.F.R. § 452.11. Because the LMRDA does not define the terms "local labor organization" or "intermediate bodies," the

Secretary has room to supply definitions, as she did in the regulation.

The Secretary's Statement of Reasons, however, does not cite to the language of 29 C.F.R. § 452.11. Indeed, it has language which appears to disavow a functional approach: "There is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot vote among the members of the intermediate body." This is seemingly inconsistent with the regulation, which requires a "functions and purposes" analysis.

As to the second question, other parts of the Statement then purport to look at the evidence to determine what "functions" are performed by the two entities, perhaps applying the test in the regulations. But the Statement does so without any reference to the Secretary's own precedents, including the precedents discussed in Boilermakers and Humble Oil.[8]

---

[8] At oral argument, counsel for the Secretary was asked about the Statement's failure to cite the applicable regulation or precedents. Counsel responded that it is the Secretary's policy to avoid legal terminology in the Statements and to attempt to explain the reasons in terms that the average union member would understand. Although this is a valid and admirable interest, it does not excuse the

-14-

In _Boilermakers_, the Secretary sued to compel the National

Transient Division ("NTD"), a unit of the Boilermakers union, to

conduct elections in accordance with the provisions of the LMRDA

governing "local labor organizations." _See_ 736 F.2d at 619.  The Tenth

Circuit held that "[g]iven its structure and functions, we find no

reason to reject the Secretary's characterization of NTD as a local

labor organization." _Id._ at  623.  The court noted first that, because

NTD was subordinate to the International and had no subordinate

organizational units, it had "the relatively simple organizational

structure characteristic of local labor organizations."  _Id._  But the

court reasoned that the "[m]ost important" factor supporting the

Secretary's position was that "NTD performs the _functions_ of a local."

_Id._ (emphasis added).  In so holding, the court relied on the command

of 29 C.F.R. § 452.11 to examine the "functions and purposes" of the

entity in question.  _Id._ at 622 (quoting 29 C.F.R. § 452.11).  The

functions of the NTD included the negotiation of collective bargaining

---

failure to provide an adequate statement for purposes of judicial
review.   If regulations and precedents are not explicitly cited, their
relevant language should at least be referenced in a way, albeit in
layperson's terms, that allows a reviewing court to know whether the
Secretary is relying on such precedents, repudiating them, or refining
them.
          The Secretary's response is also odd because Harrington's
complaint document itself cited to the applicable regulations in the
Code of Federal Regulations, to _Boilermakers_, and to the legislative
history of the LMRDA.  To suggest that complainants would be led astray
by some discussion of the law insufficiently credits the abilities of
union members.  They were, after all, motivated to invoke the statute
and file a complaint.

agreements, enforcing the agreements, handling grievances, collecting dues from members, maintaining out-of-work lists, and holding meetings at which members express their views.  Id.[9]

Similarly to Boilermakers, the Secretary in Humble Oil sued to force an entity purporting to be an intermediate body to conduct elections as a "local" labor organization.  1970 U.S. Dist. LEXIS 12288.  The district court, accepting the Secretary's construction of the Act, found that the supposed intermediate body, the Employees' Federation, was a statutory local because it performed "the basic local union functions."  Id. at *13 (emphasis added).  That is, "[i]t settle[d] grievances; collect[ed] dues and establishe[d] wages, benefits, and working conditions by contract negotiations with the employer; and discipline[d] its members and officers."  Id.  Even though the Employees' Federation had numerous subordinate local bodies, the court noted that these were mere "administrative arms" with "no separate autonomy" that performed no significant collective bargaining functions.  Id. at *11-12.

---

[9]      When the union in that case sought certiorari, the Secretary successfully opposed it.  Amicus Association for Uniion Democracy represents that in the Secretary's opposition to certiorari, the Secretary argued that the division there was a local union because "[i]t negotiates terms of employment with contractors, handles grievances, maintains referral lists, and collects dues." Under this definition, if it were to govern, NERC might well be a "local"; it performs three of these four functions.

Given the similarities between this case and <u>Boilermakers</u> and <u>Humble Oil</u>, the Secretary must provide some explanation distinguishing these cases. We cannot now say whether the Secretary has changed her interpretation or departed from the regulation,[10] but we can say with fair assurance that substantial questions have been raised and the Secretary's statement is inadequate to permit us to resolve them. In that sense -- the inadequacy of her statement -- the statement is arbitrary.

The Secretary denies there has been any change in interpretation or policy, but it is far from evident that this is so, and the Statement of Reasons does not adequately address this topic. The Statement of Reasons does not mention the governing regulation or precedents at all, contains language inconsistent with the "functions and purposes" approach, 29 C.F.R. § 452.11, and, to the extent it purports to apply a functions and purposes approach, fails to address or adequately distinguish the two most pertinent precedents.

---

[10] On the issue of apparent inconsistency, it is the Secretary's policy which must be the focus; the opinions of our sister courts affirming decisions by the Secretary to bring suit are most significant in that they reveal what the Secretary then purported her policy to be, and that the policy was not arbitrary. Those cases do not dictate to the Secretary what policy position she should now take.

The APA provides the applicable standard of review here and it is commonplace in APA review to require an agency to accompany a change in position with an explanation.  See P.R. Aqueduct & Sewer Auth. v. EPA, 35 F.3d 600, 607 (1st Cir. 1994). Predictability as to how the Secretary will handle these cases is of real value, and if predictability is to be thwarted in favor of other interests, there should be some explanation.  An agency's decision cannot simply depart from the agency's prior precedent without explaining its reasons for doing so. Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 808 (1973) (plurality); Shaw's Supermarkets, Inc. v. NLRB, 884 F.2d 34, 36-37 (1st Cir. 1989); JSG Trading Corp. v. USDA, 176 F.3d 536, 544 (D.C. Cir. 1999).  A deviation from prior interpretations without sufficient explanation may be considered arbitrary and capricious and therefore subject to judicial reversal. See INS v. Yueh-Shaio Yang, 519 U.S. 26, 32 (1996); Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 291 (1st Cir. 1995); P.R. Sun Oil Co. v. EPA, 8 F.3d 73-77 (1st Cir. 1993).  While this case does not involve judicial review of either an agency adjudicatory proceeding nor of agency rulemaking, the requirement of adequate explanation is an

-18-

inevitable consequence of applying the APA's arbitrary and capricious standard to the Secretary's reviewable decision whether to initiate prosecution. That requirement distinguishes this case from Heckler v. Chaney and its progeny. Chaney, 470 U.S. at 834 (comparing the presumption of nonreviewability of other agencies' decisions not to undertake enforcement actions with the reviewability of the Secretary's decision under the LMRDA).

The agency's burden of explanation is heavier where an agency has expressed its statutory interpretation in regulations, adopted after notice-and-comment rulemaking, and then seeks to depart from that interpretation. Agencies are bound by their regulations, and to permit what may be a change in the regulation without any explanation would undermine the requirement of notice- and-comment rulemaking.[11]

Agencies do have leeway to change their interpretations of laws, as well as of their own regulations, provided they explain the

---

[11]    Should the Secretary actually wish to change 29 C.F.R. § 452.11, she must do so in accord with the APA's general rulemaking provisions. 5 U.S.C. § 553 (2000). See Util. Solid Waste Activities Group v. EPA, 236 F.3d 749 (D.C. Cir. 2001) (holding that agency must follow notice-and-comment procedures even to correct technical error in regulation).

-19-

reasons for such change and provided that those reasons meet the applicable standard of review. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14 (1945) (counseling judicial deference to an agency's interpretation of a rule it promulgates pursuant to statute). Compare Citizens Awareness Network, 59 F.3d at 291-92 (remanding to agency because agency altered interpretation of regulation without providing reasoning or following statutory procedures), with Pub. Interest Research Group v. FCC, 522 F.2d 1060, 1065 (1st Cir. 1975) (upholding agency change in policy where agency provided a sufficiently clear explanation). Judicial deference to agency interpretations and policy choices is, in part, premised on the notion that agencies have greater expertise in their area of specialty than do courts, and that they should have flexibility to deal with changing economic and social realities. See, e.g., Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 863-66 (1984). It is up to the agency in the first instance to interpret the statute and apply those interpretations to the facts.

Based on the Secretary's Statement of Reasons, we are unable to determine if the Secretary has changed the policy articulated in 29 C.F.R. § 452.11 or her interpretation of that policy. We are confronted here with a different problem than was faced in Bachowski, created by what appears to be an inconsistency between the Secretary's approach and her

-20-

regulation and prior decisions, which may represent a volte-face by the Secretary. Her Statement of Reasons fails to explain whether she is departing from her prior course and, if so, the reasons for the change.

Decisions about the proper meaning of LMRDA statutory terms, and the proper application of the Act's mandate, are for the Secretary to make, so long as they do not contravene the Act. These decisions are not up to the courts; thus, it is more appropriate for us to refrain from taking any judicial view at this point on the underlying interpretive issues in this case. Respect for her authority requires a remand, rather than final court resolution of the issue now. Moreover, a finding that the Secretary has acted arbitrarily and capriciously as to the ultimate issue would be premature, as it is not clear on this record that the Secretary is in fact repudiating her prior interpretations here.

The paucity of explanation hinders judicial review, requiring a remand to the Secretary to reopen, thereby providing the Secretary an opportunity to better explain her position. Bachowski, 421 U.S. at 574; Maine v. Civil Aeronautics Bd., 520 F.2d 1240, 1245 (1st Cir. 1975) (remanding for further proceedings because "[t]here are internal inconsistencies and a failure to clearly articulate the standard being applied" in agency decision); see also Doyle v. Brock, 821 F.2d 778,

781 (D.C. Cir. 1987); DeVito v. Schultz, 300 F. Supp. 381 (D.D.C. 1969). As the Supreme Court long ago said:

> [The] basis [for an administrative action] must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, [w]e must know what a decision means before the duty becomes ours to say whether it is right or wrong.

SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (internal quotation marks omitted); see Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 375 (1998) ("The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel . . . and effective review of the law by courts.") The Secretary is already committed by statute to expending resources in this area and has presumably reviewed all the pertinent factual materials presented. It is not a significant burden on her resources to ask her to explain her decision in a more reasoned fashion.[12] Nor do we disrupt anything by vacating her decision;

---

[12] As Judge Patricia Wald has said:

> Th[e] need to communicate should be on regulators' minds from the first moment they take up a problem, and they should constantly remind themselves that one day they will be defending their actions, no matter how specialized or partaking of expertise, before a panel of three generalists. It will not be enough that the

-22-

vacation is a proper remedy when an agency fails to explain its reasoning adequately.  See Edward S. Quirk Co. v. NLRB, 241 F.3d 41 (1st Cir. 2001) (vacating and remanding for further proceedings in absence of reasoned explanation from the Board); Gailius v. INS, 147 F.3d 34, 48 (1st Cir. 1998) (vacation and remand appropriate where agency failed to give adequate explanation for conclusions); see generally Prestes, Remanding Without Vacating Agency Action, 32 Seton Hall L. Rev. 108 (forthcoming 2001), working paper available at http://papers.ssrn.com (criticizing the practice of remanding without vacating).

Should she again decide not to initiate suit, the Secretary must file a sufficient Statement of Reasons, which addresses both the application of the functions and purposes test of 29 C.F.R. § 452.11, and whether her decision is consistent with her precedents.  If there has been a change, she should also explain whether changing labor market economics justify a modification of prior interpretation or a building construction trades exception to it, or what the other reasons

---

agency's lawyers then talk a good line; it will be necessary that the agency itself has described in its own decision what it is doing and why, in a way that will be clear to the judicial reviewers.

Wald, Judicial Review in Midpassage: The Uneasy Partnership Between Courts and Agencies Plays On, 32 Tulsa L.J. 221, 235 (1996).

for the change are.  See Yeuh-Shaio Yang, 519 U.S. at 31-32 (agency may carve out exceptions to general policy).

We are mindful of the Supreme Court's admonition that "endless litigation concerning the sufficiency of the written statement is inconsistent with the statute's goal of expeditious resolution of post-election disputes." Bachowski, 421 U.S. at 575; see also Eskridge, Note, Dunlop v. Bachowski and the Limits of Judicial Review under Title IV of the LMRDA:  A Proposal for Administrative Reform, 86 Yale L.J. 885, 890-96 (1977) (arguing that protracted judicial review impairs enforcement scheme). Nonetheless, a remand is the appropriate remedy here.  A serious question has been raised about the Secretary's adherence to her own articulated policies.  Any delay and uncertainty occasioned by remand is justified by the need for clarity, both in this case and more generally, as to her present interpretation of her statutory obligations.  Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 254 (1990).

The district court's dismissal of the petition for review is reversed, the Statement of Reasons is vacated, and the matter is remanded to the district court with instructions to remand to the Secretary for proceedings consistent with this opinion.

So ordered.


-- Concurrence Follows --

**TORRUELLA, Circuit Judge (Concurring).** My colleagues in the majority conclude that they are presently unable to determine whether the Secretary's actions in this case were unlawful, and that only further clarification from the Secretary will permit proper review. Given this holding, as I understand it, the Secretary now has three options following remand: 1) she may initiate suit; 2) she may decline to initiate suit, acknowledge that she is adopting a new enforcement policy and interpretation of the Act, and provide her reasons for altering her prior policy; or 3) she may decline to initiate suit and attempt to clarify for the court why she believes her decision is consistent with the governing regulations and established past practice.

I fully agree that the Secretary is entitled to pursue either of the first two options. I write separately to express my view that it would be futile for the Secretary to exercise the third option. We need no additional information to correctly conclude that the Secretary's decision in this case does not square with her established policies and practices. Since the Secretary has provided no reasoned basis for the inconsistency, we should set aside her decision as "arbitrary and capricious" in violation of 5 U.S.C. § 706(2)(A). See Honeywell Int'l, Inc. v. NLRB, 259 F.3d 119, 123 (D.C. Cir. 2001) ("Without more, the [agency's] departure from precedent without a reasoned analysis renders its decision arbitrary and capricious.").

-26-

In 1973, the Secretary enacted a regulation directly governing determinations of whether a labor organization is a "local" or "intermediate" body for purposes of § 401 of the LMRDA. See 38 Fed. Reg. 18,324, 18,326 (July 7, 1973). That regulation, which remains in effect, provides that "[t]he characterization of a particular organizational unit as a 'local,' 'intermediate,' etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself." 29 C.F.R. § 452.11 (emphases supplied). The Secretary's past commitment to the regulation's "functional" -- as opposed to merely "structural" -- approach is borne out in the only reported decisions addressing the question of whether a union entity is a "local" or "intermediate" body for purposes of Title IV's election provisions. See Donovan v. Nat'l Transient Div., Int'l Bhd. of Boilermakers, 736 F.2d 618 (10th Cir. 1984); Shultz v. Employees' Fed'n of Humble Oil & Ref. Co., No. 69-C-54, 1970 U.S. Dist. LEXIS 12288 (S.D. Tex. Mar. 31, 1970).

By contrast, the Secretary's Statement of Reasons in the present case declares that "[t]here is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot vote among the members of the intermediate body" (emphases added). Taking this statement as a guiding principle, the Secretary then proceeds to analyze only the

structure of the labor organization in question, concluding that the UBC locals "satisfy the definition of 'local' in the ordinary sense" in that they are "are clearly subordinate to NERC, which in turn is subordinate to the International."

I fail to see how further clarification will reconcile the Secretary's present position (that there is "no basis" for conducting an inquiry of the entity's "functions and powers") with the governing regulation (which mandates an inquiry of the "functions and purposes" of the challenged entity).[1] The Secretary has had every opportunity in this litigation to characterize her decision as consistent with past practice, and I presume that she did not hold back her best arguments. Nevertheless, the Secretary's extended analysis of the case law is

_____

[1]  One might argue that the Secretary's present statement can be reconciled with the regulation because it purports only to find no basis for a functional inquiry in the statute and legislative history, while not, specifically, saying that no such basis exists in the regulations.  An argument of this sort would, however, be disingenuous. Any valid administrative regulation must have <u>some</u> basis in the language of a statute.  That is, a valid regulation must, at the very least, provide a reasonable interpretation of an otherwise ambiguous statutory provision.  <u>Becker</u> v. <u>Fed. Election Comm'n</u>, 230 F.3d 381, 390 (1st Cir. 2000), <u>cert. denied</u>, --- U.S. ---, 121 S. Ct. 1733 (2001). If it is accurate that there is truly <u>no</u> basis in the Act for conducting a functional inquiry, as the Secretary contends, we likely would be compelled to hold the regulation mandating such an inquiry invalid.  <u>See</u> <u>id.</u> ("Agency regulations in accord with [Congress'] unambiguously expressed intent are upheld; those that contravene that intent are invalid.").  Thus, the inconsistency remains.  Any statement by an agency that is tantamount to a declaration that its own governing regulation is invalid would, surely, require acknowledgment and explanation.

unpersuasive, and she makes no attempt to harmonize her decision with 29 C.F.R. § 452.11. If we are not yet convinced that the Secretary has pursued a consistent approach, what more will she reveal in a supplemental statement that is likely to sway us?

To be sure, one can conceive of a Statement of Reasons that is so elliptical or opaque that a reviewing court simply cannot discern the Secretary's position or rationale. And in such cases, I fully agree that further explanation from the Secretary is warranted. See, e.g., Donovan v. Local 6, Wash. Teachers' Union, 747 F.2d 711, 719 (D.C. Cir. 1984) (mandating a supplemental statement of reasons where the Secretary's reasons for finding no violation of the Act were "perfunctory and cryptic"). However, this is not such a case. The Secretary has stated her present interpretation of the Act with reasonable clarity, and her present interpretation obviously does not gibe with the readily discernible past policy and practice.[2]

_____

[2] I also believe that, in a laudable effort to accord deference to an administrative agency, the majority opinion unintentionally threatens to impose a heightened and wholly unnecessary administrative burden on the Department. As the Statement of Reasons in the Appendix should indicate, these are relatively informal documents. While they are intended to aid courts in reviewing agency action, they are also intended to be read and understood by the complaining union members. Dunlop v. Bachowski, 421 U.S. 560, 572 (1975). For this reason, we are entitled only to a simple statement that "inform[s] the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based." Id. at 573-74. If we require the Secretary to provide a Statement of Reasons that goes beyond even the appellate-caliber briefing that we already have, the likely result will be that the Secretary's responses

Accordingly, we should conclude that her decision must be set aside as arbitrary and capricious. If, following remand, the Secretary decides not to initiate suit, she should be required to provide a Statement of Reasons that acknowledges her departure from precedent. She should also have to explain her rationale for the decision and explain whether the decision is consistent with both the LMRDA and any governing regulations currently in effect.

Since my view does not command a majority of this panel, I must await, with morbid curiosity, a persuasive clarification of the reasons for the Secretary's decision that could not be articulated in the original Statement of Reasons, the Secretary's thirty-one page brief, or the fifteen page submission of the amicus union.

---

become less accessible to the lay complainant. Worse yet, the administrative resources necessary to generate such an extensive legal analysis for each decision not to sue will likely distract the Department from processing the complaints of union members in a timely fashion.

**STATEMENT OF REASONS OF THE SECRETARY OF LABOR**

The complainant, Thomas Harrington, a member in good standing of New England Regional Council of Carpenters [Regional Council], United Brotherhood of Carpenters and Joiners, AFL-CIO, filed a timely complaint alleging that the Regional Council fails to elect its officers in compliance with Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 482, et seq. (the "Act"). For the following reasons, the complaint is dismissed.

The complainant alleges that since the Regional Council assumed functions traditionally performed by the locals of the Carpenters, The Regional Council is now acting as a "local" labor organization and must therefore directly elect its officers to remain in compliance with section 401(b) of the Act, 29 U.S.C. § 481(b). Section 401(b) of the Act states, "Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing." The Regional Council considers itself an intermediate body, and elects its officers via delegates elected by the members of locals pursuant to section 401(d) of the Act, 29 U.S.C. § 481(d). Section 401(d) states that, "Officers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good

standing or by labor organization officers representative of such members who have been elected by secret ballot."

The Regional Council was created by the United Brotherhood of Carpenters and Joiners International on July 1, 1996. The bylaws of the Regional Council do appear to invest it with some of the powers and functions the locals traditionally possessed. However, the Department is unable to conclude that for this reason the Regional Council is no longer an intermediate body entitled to elect its officers in accordance with either of the two choices prescribed by Congress for intermediate bodies in section 401(d) of the Act.

Congress' purpose in ordering unions to conduct free and fair periodic elections was "to insure that the officials who wield [power] are responsive to the desires of the men and women whom they represent". S. Rep. No. 187, 86th Cong., 1st Sess. 19-20. In section 401(d) of the Act, Congress indicated that with respect to intermediate bodies the above purpose could be achieved either directly by a secret ballot vote among all of the members of the intermediate body or indirectly by delegates who themselves were elected directly by secret ballot vote among all the members they represent. Furthermore, that same report indicates that Congress recognized that intermediate bodies had varying degrees of governing power. It states, "The bill recognizes that in some unions intermediate bodies exercise responsible governing power and specifies that the members of such bodies as

-32-

systems boards in the railroad industry be elected by secret ballot of the members of the union <u>or union officers elected by the members</u> by a secret ballot." <u>Id.</u> (emphasis added). Thus, Congress understood that intermediate bodies could exercise "governing power" and still be permitted to elect officers via delegate as long as these delegates were selected by secret ballot. There is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot vote among the members of the intermediate body.

Further, the Department's investigation disclosed no evidence that would provide a basis for concluding that the Regional Council is now a "local" labor organization. The available evidence indicates that the locals that comprise the Regional Council have not been dissolved or absorbed by the Regional Council so as to be mere administrative arms of the Council, but rather appear to continue to function as separate labor organizations under the Act. From the evidence obtained from the Department's investigation, the locals subordinate to the Regional Council satisfy the definition of "local" in the ordinary sense. All of the locals of the Carpenter's New England region are clearly subordinate to the Regional Council, which in turn is subordinate to the International. These locals are independently chartered, have identifiable memberships, elect their own

officers, and have their own bylaws.  The locals are parties to collective bargaining agreements, and although the Regional Council negotiates these agreements, the locals have the authority to ratify them.  The New England Carpenter locals hold meetings periodically where the membership is informed of union activities and business. Each local has its own budget and manages its own bank accounts. Collection of membership dues is performed at the local level.  First level grievances are administered by stewards at the local level. Based upon these facts, we are unable to conclude that the locals of the New England Regional Council are so depleted of power and function that they no longer constitute "local" labor organizations under the LMRDA.   There is no violation.

It is concluded from the analysis set forth above that the investigation failed to disclose any violation of the Act upon which the Secretary of Labor may bring an action under Section 402 of the Act, 29 U.S.C. § 482, to set aside the election.  Accordingly, we are closing our file on this matter.