TORRUELLA, Circuit Judge
(Dissenting).
In Harrington I, I concurred to express my view that the Secretary’s decision not to bring suit under Title IV of the LMRDA departed from her established policies and practices. Therefore, the two options legitimately available to the Secretary following remand were (1) to initiate suit, or (2) to decline to do so and to “acknowledge that she is adopting a new enforcement policy and interpretation of the Act, and provide her reasons for altering her prior policy.” Harrington v. Chao, 280 F.3d 50, 61 (1st Cir.2002)(“Harrington I ”)(Torruella, J., concurring). I suggested that it would be futile for the Secretary to “decline to initiate suit and [to] attempt to clarify for the court why she believes her decision is consistent with the governing regulations and established past practice.” Id. Nevertheless, this is precisely the path the Secretary has chosen. I dissent because I continue to believe that the Secretary’s decision represents a departure from precedent and that such “[a] deviation from prior interpretations without sufficient explanation may be considered arbitrary and capricious and therefore subject to judicial reversal.” Harrington I, 280 F.3d at 58-59; Honeywell Int’l, Inc. v. NLRB, 253 F.3d 119, 123 (D.C.Cir.2001)(“Without more, the [agency’s] departure from precedent without a reasoned analysis renders its decision arbitrary and capricious.”).
While acknowledging that a union’s structure is not determinative of the “intermediate” or “local” character of an entity under the LMRDA, the majority opinion persuasively defends, as within the Secretary’s discretion, the SSR’s consideration of the NERCC’s location within the UBC’s organizational hierarchy. I do not disagree. In fact, the NERCC’s placement within the UBC’s organizational structure is precisely what brings us to the question before us: whether the NERCC has assumed the functions and purposes of a local labor organization regardless of its “intermediate” position within the UBC’s structure. As the regulation specifies, “[t]he characterization of a particular organizational unit as a ‘local,’ ‘intermediate,’ etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself.” 29 C.F.R. § 452.11. The question, then, is not whether the Secretary was forbidden to consider where the NERCC was situated within the UBC’s structure but whether the Secretary’s application of the regulation’s functions and purposes test represented a departure from precedent.
The SSR acknowledges that the functions and purposes approach has required *71 determination of “whether the intermediate body has taken on so many of the traditional functions of a local union that it must in actuality itself be considered a local union.” SSR, at 3. As the Secretary points out, “[a]ny other rule would enable intermediate bodies to completely devalue members’ direct participation in officer elections in a manner that is inconsistent with key purposes and provisions of the Act.” SSR, at 9. Regardless of an entity’s position in the middle tier of a union, the Secretary concedes, “there must be some point at which an entity at that middle tier subsumes so much authority from its subordinate unions that it must be deemed to have itself also become a local labor organization subject to the Act’s direct election requirements.” Id.
The majority notes, quoting the Secretary’s reply brief, that both parties agree on this “basic point that when an intermediate’s role becomes so overwhelming or omnipresent in union affairs, the requirements for direct elections must apply” and that the dispute is therefore “not one of principle, but over where to draw the line.” The question the SSR needed to answer, then, was whether the NERCC’s functions and purposes are so overwhelming and omnipresent in union affairs that the statutory requirement of direct elections applies. It is my opinion that if the SSR had indeed addressed this question, the Secretary’s own description of the NERCC’s functions would have led inevitably to the conclusion that the NERCC “has taken on so many of the traditional functions of a local union that it must in actuality itself be considered a local union.” SSR, at 3.
The SSR acknowledges that “the NERCC performs a number of important responsibilities, some of which may be traditionally associated with local unions.” SSR, at 9.
[The NERCC] negotiates collective bargaining agreements. It has exclusive authority to hire, discipline, promote, and fire all organizers and business representatives within the New England region. The NERCC’s Executive Secretary-Treasurer supervises and directs all representatives and organizers. The stewards are appointed by the NERCC’s representative, must report all problems arising at the job site to the representative, and serve at the representative’s discretion. The NERCC determines and levies a portion of the members’ dues not determined and levied by the locals, and approves all monthly dues levied by the local unions. The NERCC’s Executive Secretary-Treasurer appoints all trial committees.
Id. at 9-10. Rather than proceeding to address whether these functions and purposes of the NERCC demonstrate an assumption of authority sufficient to render the NERCC subject to the LMRDA’s direct election requirements, however, the SSR concludes that because “[t]he locals that are subordinate to the NERCC ... are not ‘merely administrative arms’ of the union but play such a significant role in dealing with their members ... there is no basis for concluding that the NERCC must also be considered a local to carry out the purpose of the [LMRDA].” SSR, at 10 (internal citation omitted).
The SSR thus ultimately formulates the issue as a question “of the irreducible minimum that must remain in local unions if higher bodies are not also to be subject to the direct election requirement.” SSR, at 9. The NERCC locals meet that minimum, in the Secretary’s opinion, because
the NERCC locals are independently chartered, have identifiable memberships, elect their own officers, and have their own bylaws. Although initially appointed by a NERCC representative, *72 stewards are local members, and resolve most grievances without the participation of or input from the NERCC representative. The locals also administer all job referrals on a local, rather than a regional, basis. (The referral process, which is determined by the NERCC representative, may vary from local to local.) The locals determine and collect monthly dues. A person joins the UBC by becoming a member of a local union, and a member’s journeyman level is determined by the local upon admission. A member can withdraw from the union only “by submitting a clear and unequivocal resignation in writing to the Local Union.” Although the UBC Constitution provides that charges shall be filed and tried by a Regional Council, NERCC’s trial procedure requires that alleged violations first be referred to the relevant local’s executive board for an informal hearing with the goal of an informal resolution before charges are filed with the NERCC. Although collective bargaining agreements may be negotiated by the NERCC on a multi-local basis, locals are parties to the agreement and conduct ratification votes among local members. In addition to these functions, the locals also hire their own clerical employees, maintain offices, maintain bank accounts, hold meetings, engage in voluntary organizing drives, lobby, and administer scholarship and disability funds.
SSR, at 10. The SSR rests its decision on the grounds that “the local unions that are subordinate to the NERCC continue to perform functions and purposes traditionally associated with local unions,” and “[i]n these circumstances, neither the Department’s regulation, nor any applicable precedent, compel a conclusion that the Secretary should require the NERCC to conduct elections in accordance with the LMRDA’s election rules for local unions.” SSR, at 10.
The SSR summarizes this new test as follows:
If the subordinate organizations in fact continue to perform functions and exist for purposes traditionally associated with local labor unions, the union’s characterization of an entity placed structurally between such organizations and the international union as an ‘intermediate body’ will be upheld even though the intermediate body also performs some other functions traditionally associated with local unions.
SSR, at 4. The SSR thus concludes that the NERCC can be deemed an intermediate body because the subordinate locals continue to serve some functions and purposes of traditional locals.[20]
This determination of the NERCC’s intermediate status based on the functions *73 retained by the locals clearly constitutes a departure from the traditional functions and purposes test, which asked not whether the locals retained any of their traditional functions and purposes but whether the “entity at that middle tier subsumes so much authority from its subordinate unions that it must be deemed to have itself also become a local labor organization subject to the Act’s direct election requirements.” SSR, at 9. The district court, drawing from this court’s analysis in Harrington I and from the SSR itself, accurately identified this departure from the traditional functions and purposes test:
The issue under the traditional test, as defined by the Court of Appeals, is not whether the NERC[C]’s locals perform some of the tasks associated with a labor union, but rather (in the Secretary’s own words) whether the NERC[C] as an intermediate body, “has taken on so many of the traditional functions of a local union that it must in actuality itself be considered a local union.”
Harrington v. Chao, 286 F.Supp.2d 80, 86 (D.Mass.2003) (citations omitted).
Near its conclusion, the majority opinion concedes that what the district court refers to as the SSR’s “functions plus structure” approach demonstrates a shift in emphasis in applying the functions and purposes test but concludes that “the Secretary is permitted some flexibility, so long as she provides some explanation for shifting her emphasis” and that “nothing [is] arbitrary in the Secretary’s shift here, which she thoroughly explained.” I do not dispute the Secretary’s power to alter her interpretation of the regulation but, as this Court noted in Harrington I, she cannot do so without the explanation required by the APA, and “[a] deviation from prior interpretations without sufficient explanation may be considered arbitrary and capricious and therefore subject to judicial reversal.” Harrington I, 280 F.3d at 58-59.[21]
The SSR before us is certainly lengthier than the Statement of Reasons in Harrington I and contains references to the governing regulations and relevant caselaw ignored by the original Statement. Still, the SSR simply echoes the approach taken in the original Statement of Reasons and fails to provide sufficient explanation for the Secretary’s reliance on the minimum of traditional local functions retained by the locals instead of the NERCC’s functions and purposes. The Secretary attempts to gloss over the departure from precedent by feebly distinguishing the relevant case-law. The SSR distinguishes Boilermakers on the grounds that the entity at issue in that case was not “intermediate,” as it had no subordinate entities within the union structure. SSR, at 6. Similarly, Humble Oil is distinguished by the negligible subordinate bodies determined by the court to be “merely administrative arms” of the entity at issue. SSR, at 6-7. The SSR thus again focuses on the functions and purposes of the subordinate entities, or lack thereof, instead of acknowledging the evidence these cases provide of the Secretary’s and the courts’ prior recognition of collective bargaining and member discipline as among the quintessential functions and purposes of local unions. The majority opinion does not deny the thrust of this caselaw:
Indeed, the Boilermakers court described the functions of the union body at issue, which included negotiating the *74 basic terms of collective bargaining agreements and grievance handling (which may have included member discipline), to be the functions of a local. See 736 F.2d at 623. And the court in Humble Oil similarly classified collective bargaining and member discipline as “local” functions, (citations omitted)
Regardless, the majority finds reasonable the SSR’s conclusion that “Boilermakers and Humble Oil do not purport to address precisely which functions and purposes are so intrinsically local in nature that any labor organizations having those, functions and purposes must be a ‘local union’ for the purposes of the LMRDA.” SSR, at 9. •Admittedly, these cases may not have framed the issue in precisely these terms. They represent clear precedent, however, regarding which functions and purposes the Secretary previously identified as traditional functions and purposes of local unions.
The majority’s reversal relies heavily on a characterization of the historical context of the LMRDA’s passage and specifically the contention that Congress expected intermediate organizations to perform some functions traditionally associated with local labor unions, among them collective bargaining. Legislative history indicating that intermediate bodies were expected to “exercise responsible governing power” is thus read by the majority “against the backdrop of union organizations at the time” to include negotiation of collective bargaining agreements and member discipline. This allows the majority to argue that the SSR does in fact consider the functions and purposes of the NERCC, and not only those of the local bodies, in compliance with the traditional functions and purposes tést. ’ The SSR could thus, in the majority’s view, reasonably conclude that the NERCC is an “intermediate” entity because some of the functions and purposes it serves that are historically associated with locals were also associated with intermediate bodies at the time of the LMRDA’s passage.
Judge Lipez’s concurrence successfully undermines this historical argument, demonstrating that it is unclear whether Congress intended “intermediate” bodies to include entities performing the functions assumed by the NERCC and that precisely this sort of usurpation of power without direct democratic participation of the rank- and-file membership may have contributed to legislators’ motivation in enacting the LMRDA. The unequivocal message of the legislative history, however, is that the congressional purpose in passing the LMRDA was to provide rank-and-file union members with frequent, direct elections of the officers whose actions determine the most fundamental aspects of their working lives. As Judge Lipez notes, “by requiring local unions to select local officers by direct membership election, Congress protected the rights of rank-and-file union members to exercise control over the decisions and activities that affected their daily working lives.” Since July 1996, the rank-and-file members of the UBC have not been able to elect directly the officers who negotiate agreements with their employers, enforce these agreements, and ultimately oversee member discipline. This is precisely the scenario the LMRDA sought to prohibit and what the regulation’s “functions and purposes” test was meant to identify, as recognized in the prior practice of the Secretary and affirmed by the courts. As appellees’ brief laments, “[i]f every union could infuse so-called intermediate bodies with the functions and purposes of a local labor organization without having to be held accountable under the same elections law of a local, then the intent of the LMRDA in this regard would be emasculated and millions of union members would *75 be effectively disenfranchised.” Surely, this was not Congress’s intent.
I respectfully dissent.

. Appellees dispute the factual basis of the Secretary's conclusion that the NERCC’s subordinate locals retain traditional functions of local unions of any real significance. For example, the Secretary states that the locals ratify collective bargaining agreements and levy dues. The significance of the local's involvement in the ratification of collective bargaining agreements negotiated by the NERCC is tempered, however, by the fact that all of the locals' members’ votes are counted within the regional unit; in other words, even if one local's members were to reject the contract unanimously, it would still become the contract for that local if its members’ votes were in the minority among the total of votes cast within the NERCC. The locals' role in the ratification process, then, appears primarily clerical. Appellees also note that while the locals may establish monthly dues, those dues must be approved by the NERCC. It is thus unclear to what extent the NERCC's locals do in fact perform the modicum of traditional functions of locals relied upon by the Secretary.

. Under the APA, courts have the power and the duty to "hold unlawful and set aside agency action, findings, and conclusion found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C § 706(2)(A); Dunlop v. Bachowski, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).