**Patrick ELLIS Plaintiffs,**

v.

**Elaine L. CHAO, Secretary, United States Department of Labor Defendant.**

**No. 01 Civ. 0280(SHS).**

United States District Court, S.D. New York.

Aug. 9, 2004.

Joseph P. Carey, Joseph P. Carey, P.C., Fishkill, NY, for Plaintiffs.

Heidi A. Wendel, United States Attorney for the Southern District of New York, New York City, for Defendant.

## OPINION AND ORDER

STEIN, District Judge.

Plaintiff Patrick Ellis challenges the decision of the Secretary of the United States Department of Labor to dismiss Ellis's administrative complaint alleging fraudulent activities in the February 2000 statewide election for officers of the Civil Service Employees Association (the "CSEA"). Ellis seeks a declaratory judgment voiding that election as well as an injunction directing the Secretary of Labor to conduct a new statewide election for CSEA officers in New York. Because this Court finds that the Secretary's decision to dismiss plaintiff's complaint was not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," her motion for summary judgment is granted.

Shortly after this litigation was commenced in 2001, the parties cross-moved for summary judgment; this Court grant-

ed summary judgment to the Secretary and denied plaintiff's motion as well as his request for leave to amend the Complaint. *See Ellis v. Chao,* 2001 WL 1550809, 169 L.R.R.M. 2016 (S.D.N.Y. Dec. 5, 2001). The United States Court of Appeals for the Second Circuit subsequently affirmed the denial of summary judgment to Ellis, but vacated and remanded the grant of summary judgment to the Secretary as well as this Court's denial of Ellis's motion to amend. *See Ellis v. Chao,* 336 F.3d 114 (2d Cir.2003). Upon remand, the parties have once again cross-moved for summary judgment.

## I. BACKGROUND

Three candidates vied for the position of president of the statewide CSEA organization in the February 2000 election: the incumbent Danny Donohue and two challengers—plaintiff and Bill Walsh. Pursuant to a contract with CSEA, True Ballot, Inc. was responsible for the design, printing and mailing of the ballots, collecting and securing the returned ballots, and tallying the votes. True Ballot in turn contracted with NewKirk Products, Inc. to print ballots designed by True Ballot and to mail those ballots to CSEA members. The ballots were sent to union members in January of 2000.

On February 8, 2000, True Ballot obtained the returned ballots from Trustco Bank—the custodian of those returned envelopes—and began the vote tallying process. For this exercise, a conference room was reserved in an Albany hotel. Plaintiff and a number of individuals associated with the other candidates were present as observers to monitor the vote tallying. As True Ballot made an initial automatic tally by scanning the returned ballots, monitors in the conference room showed projections of the election results. Apparently based on one such projection, a news release was

issued on February 9 that the incumbent Donohue had been re-elected with 51% of the votes. At that time, the projection showed that Ellis had come in second with approximately 15,000 votes.

As the tallying process progressed, True Ballot discovered that the vote count had become skewed due to systematic misreading by the scanning machines, apparently the result of mistakes in the design and printing of the ballots. After consultation with the election committee, True Ballot undertook various corrective measures, including recounting the votes manually. Because CSEA had to vacate the conference room, the manual tally was halted on February 10 and resumed on February 22 at the same location.

The entire tallying process, including an audit of the results, was completed by February 25, when True Ballot provided the election results to the election committee: Donohue, the incumbent, had been re-elected with more than 19,000 votes, plaintiff received approximately 14,000 votes and Bill Walsh received approximately 3,000 votes.

Through his observations, Ellis believed that the tallying process had been infected with a number of improprieties, including unreasonable restriction on the observers' right of access and failures to comply with relevant protocols. Ellis filed four internal protests with CSEA's statewide election committee (the "election committee"), alleging various violations of CSEA's electoral procedures and of the provisions of the Labor Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 401, *et. seq.* and regulations promulgated thereunder, 29 C.F.R. § 452, *et. seq.* The election committee dismissed all four protests in a March 14 determination sent to Ellis.

Plaintiff then filed a complaint with the Office of Labor and Management Stan-

dards of the United States Department of Labor, seeking a review of the election pursuant to 29 U.S.C. § 482(a). That provision permits a union member who has exhausted his internal union remedies to file a complaint with the Secretary of Labor, who must then conduct an independent investigation of the union member's complaint. *See* 29 U.S.C. §§ 482(b), 521. Ellis alleged numerous violations of the LMRDA, including improper ballot design and mailing, Walsh's receipt of unlawful funding, restriction on observers' right of access, errors in vote tallying, and the failure of the election committee to monitor and control the conduct of the election. Ellis's complaint was subsequently dismissed for the reasons provided in a "Statement of Reasons for Dismissing the Complaint of Patrick Ellis concerning the Election of Union Officials of the CESA" (the "Statement of Reasons").

This action was then commenced, seeking a declaratory judgment as well as an injunction directing the Secretary to bring a civil suit to compel a new election pursuant to 29 U.S.C. § 482(b). As noted above, summary judgment was granted to the Secretary. Upon appeal, the Second Circuit found that the Secretary's Statement of Reasons was "obviously conclusory" and "not sufficient for [the court] to be able to determine whether the Secretary's [decision was] arbitrary and capricious." *See Ellis v. Chao*, 336 F.3d at 123. Specifically, the Second Circuit noted that Secretary had failed to provided explanations as to why certain substantiated allegations, such as the restrictions of observers' rights, could not have altered the outcome of the election, failed to describe the investigation her agency undertook, failed to provide a verified final vote tally, and failed to address certain allegations asserted by plaintiff, such as the improper exclusion of over 2,000 votes. *See id.*, 336 F.3d at 124. As a result, the Second Circuit remanded the

action and directed this Court to require the Secretary to present a more substantive statement of reasons "explaining not only what the Secretary's ultimate determination was, but also the process that led to, and the basis for, that decision." *See id.*, 336 F.3d at 127.

Approximately eight months after the remand, the Secretary issued a "Supplemental Statement of Reasons for Dismissing the Complaint of Patrick Ellis Concerning the Election of Union Officers of the CESA" (the "Supplemental Statement of Reasons"), which sets forth defendant's factual findings and conclusions in greater detail. It contains findings both as to the accuracy of plaintiff's allegations and as to their sufficiency. In the first category, it states that the Secretary's investigation only substantiated five of the allegations asserted by Ellis and found 11 allegations to be inaccurate. And as of those five allegations substantiated in the investigation, she found that it was improbable that any of them could have affected the outcome of the election. Consequently, the Secretary concluded that she did not have a statutory duty to initiate a civil action to void the February 2000 election because "there was no violation of [29 U.S.C. § 481] that may have affected the outcome of the election." *See* Supplemental Statement of Reasons ("Supp.Stmt.") at 16.

## II. THE SUMMARY JUDGMENT STANDARD AND THE APPROPRIATE SCOPE OF JUDICIAL REVIEW

The moving party is entitled to summary judgment if the record, considered as a whole, "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the Court will construe the evidence

in the light most favorable to the nonmoving party and draw all inferences in his or her favor. *See Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir.2003). Here, this Court's task in evaluating the motions for summary judgment is two-fold.

Under the LMRDA, the Secretary has substantial discretion in determining whether to bring a civil suit to challenge a labor union election pursuant to 29 U.S.C. § 482(b). However, she is "required" to initiate suit once she finds that election irregularities "may have affected the election's outcome." *See Ellis v. Chao*, 336 F.3d at 122 (describing the requirements of 29 U.S.C. § 482(b)). Her decision not to bring a civil suit in response to a complaint is subject to judicial review. As a preliminary matter, this Court must ascertain whether the facts set forth in the Supplemental Statement of Reasons are sufficiently specific and detailed to permit meaningful judicial review. *See Ellis v. Chao*, 336 F.3d at 122–125; *cf. Harrington v. Chao*, (*Harrington I*) 280 F.3d 50, 60 (1st Cir.2002).

Once the Court determines that the Secretary has asserted her reasons with sufficient specificity, the substance of defendant's reasons is examined, but only to determine whether her decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *See Dunlop v. Bachowski*, 421 U.S. 560, 565, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (citing the standard of review delineated in 5 U.S.C. § 706(2)(a)), *overruled on other grounds, Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). Thus, the scope of judicial review is "narrow," *see Harrington I* 280 F.3d at 56, and the district judge must "refrain from substitut[ing] its own judgment for that of the Secretary." *See Dunlop*, 421 U.S. at 572, 95 S.Ct. 1851.

Thus, this Court's review seeks the answers to two questions: (1) as to the allegations the Secretary deemed unsubstantiated, whether it was plausible for her to draw the factual conclusions she did on the basis of the investigation that her agency had conducted; *see Ellis v. Chao*, 336 F.3d at 121; and (2) as to the substantiated violations, whether it was rational for the Secretary to find it improbable that any such violation "may have affected the election's outcome." *See id.*, at 122.

Ellis is entitled to summary judgment if this Court determines the reasons that the Secretary offered for dismissal of his administrative complaint are "so irrational as to [render her decision] arbitrary and capricious." *See id.*, 421 U.S. at 575, 95 S.Ct. 1851; *cf. Harrington v. Chao*, (*Harrington II*) 372 F.3d 52, 58 (1st Cir.2004) (explaining that an aggrieved union member is entitled to summary judgment if the Secretary of Labor's decision "falls within the narrow band of administrative determinations that fail the deferential arbitrary and capricious test"). Conversely, the Secretary is entitled to summary judgment if this Court finds she has offered plausible reasons for finding Ellis's allegations unfounded or finding it improbable for them to have any likelihood of having altered the outcome of the February 2000 election. *Cf. Harrington II*, 372 F.3d at 63 (remanding for entry of summary judgment for the Secretary of Labor because she offered a plausible explanation for her decision).

## III. DISCUSSION

### A. Specificity of the Secretary's Supplemental Statement of Reasons

At the outset, this Court must ascertain whether the Supplemental Statement of Reasons possesses sufficient specificity to

permit meaningful judicial review and to overcome the defects in the original Statement of Reasons that were identified by the Second Circuit. As the Supreme Court observed, "the basis of [an administrative decision] must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive:" *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

◼ The Secretary's Supplemental Statement of Reasons is based on "a new review [of the] investigative record as it existed at the time of the initial Statement of Reasons." *See* Supp. Stmt. at 2. It provides greater details regarding the investigation the Secretary conducted. For example, it states that the Department of Labor staff interviewed "union officials, and officials of Burns International Security Services, Trustco Bank [custodian of the ballots prior to and during the tally], True Ballot, Inc., NewKirk Products, Inc., the union's [election committee], union members, observers and candidates," including Ellis. *See id.* The investigation also included "review of the ballots, ballot tally, and auditing process, the election documents, schematics of the tally site, sample ballots, and a hand count of the number of ballots." *Id.* It did not include an independent tally of the votes. *See id.* The Supplemental Statement of Reasons also provides this Court with the Secretary's findings as to the conduct of the election, including information on the selection of True Ballot, on the vote tallying process, and the audited results of the final vote tallies for the four statewide offices. *See id.* at 3–6.

It also contains facts as to how the Department of Labor investigated specific allegations of violations of the LMRDA and the Secretary's reasons for deeming such allegations unsubstantiated or unlikely to affect the outcome of the election. For example, with respect to Ellis's allegations of improper custody of the returned ballots, the Supplemental Statement of Reasons contains statements of Trustco's employees responsible for safekeeping those ballots during their interviews with the Department of Labor investigators. *See id.* at 9. It also addresses all allegations of violations contained in Ellis's Amended Complaint. *See* Amended Complaint at ¶ 37–44.

Accordingly, the Supplemental Statement of Reasons has remedied the defects of the original Statement of Reasons that were identified by the Second Circuit. Furthermore, it offers a detailed synopsis of the course of the Secretary's investigation and a specific account of her factual findings and her conclusions with respect to each of plaintiff's allegations. While it does not provide information as to every detail and does not address every possible contingency, *see* Plaintiff's Statement of Undisputed Facts at ¶ 12–13 (asserting that a 13–vote discrepancy could possibly indicate more substantial problems), it is nonetheless adequate to permit this Court to engage in meaningful judicial review of the Secretary's decision.

## B. The Secretary's Determinations as to the Accuracy of Ellis's Allegations

Plaintiff's 16 allegations fall into three broad categories: 1) improprieties in the conduct of the election before vote tallying began or resumed; 2) procedural improprieties during the vote tallying process; and 3) incorrect tallying of the votes. This Court will address the Secretary's findings

as to the factual basis of each category of allegations.

First, the Secretary's investigation did not substantiate any of Ellis's allegations of improprieties in the conduct of the election before vote tallying began or resumed. Those allegations include violations of CSEA internal procedures due to the designation on the printed ballots of Bill Walsh as an "independent" candidate as well as Walsh's acceptance of contributions from family and friends, over-mailing and duplicate mailing of ballots, inadequate security for the returned ballots, and True Ballot's lack of independence. In response to those allegations, Department of Labor investigators reviewed CSEA's electoral regulations, interviewed NewKirk employees, reviewed the production reports regarding the mailing of the ballots, and interviewed security personnel responsible for maintaining custody of the ballots before tallying began and during the 12–day interruption due to lack of space. *See* Supp. Stmt. at 6–8. Based on those investigations, the Secretary found that (1) neither the designation of Walsh as an "independent" candidate nor his acceptance of funds from family members violated CSEA's electoral regulations, (2) the ballots were mailed properly and duplicate mailings were few and incidental, and (3) the security of the ballots had been properly maintained throughout the tallying process. *See id.* at 6–9.

■ This Court's task in its review of those conclusions is limited to ascertaining the plausibility of the Secretary's conclusions as to the inaccuracy of those allegations of misconduct, and not the accuracy of the factual bases for her conclusions. The extensive investigation undertaken, as detailed in the Supplemental Statement of Reasons, clearly provided the Secretary with facts relevant to determine the accuracy of the allegations set forth above.

Furthermore, the Secretary's conclusions as to those allegations are plausibly based on the findings of her investigators. Accordingly, her decision to dismiss those allegations is not arbitrary or capricious.

Second, plaintiff's allegations regarding procedural improprieties in the vote tallying process include adequate oversight by the election committee, restrictions on observers' rights, improper handling of the returned ballots, and improper disclosure of preliminary results to an insurance representative. In response, the Secretary's staff interviewed CSEA and True Ballot employees regarding the participation of CSEA members in tallying the votes. *See* Supp. Stmt. at 9. They also inspected the conference room used for vote tallying, interviewed certain of the observers, reviewed all the election records, and interviewed staff responsible for opening returned ballots. *See id.* at 9–10. Finally, they interviewed election committee members, True Ballot employees and observers regarding the premature disclosure of election results. *See id.*

The Secretary's investigations substantiated Ellis's first two allegations but found the other two allegations inaccurate. Specifically, defendant found that no impropriety resulted from opening the outer envelopes to validate eligibility because the actual votes had been contained in "an inner, secret ballot envelope." *See* Supp. Stmt. at 12. The Secretary also found that the premature disclosure of the election projection was not in violation of union procedures because that disclosure had been based on a projection shown on monitors located in the tallying conference room and that the election committee clearly notified observers that those projections were not the final results. *See id.* at 15.

In light of the facts set forth in the Supplemental Statement of Reasons re-

garding the scope of the Secretary's investigation, this Court finds that the investigation was sufficiently comprehensive to uncover facts relevant for making informed determinations as to the accuracy of Ellis's allegations. Moreover, the Secretary's conclusions that two of plaintiff's allegations were unsubstantiated were plausibly based on the findings of her investigation. Accordingly, her decision to dismiss those allegations is not arbitrary or capricious.

Finally, Ellis's allegations regarding errors in the vote tallying process include double counting several thousand votes, improper inclusion of more than 2,900 ballots incapable of validation, and inaccurate counts due to malfunctions and errors in the tallying process. In response to those allegations, the Department of Labor investigators interviewed CSEA officials, employees of True Ballot and NewKirk, and observers present during the tallying process regarding the initial automatic tallying process, the procedures for determining the inclusion of incomplete ballots, and the procedures for manual tallying. *See* Supp. Stmt. at 9–11, 13–15. They also reviewed the ballots as well as tally records and conducted independent hand counts of the "voted ballots." *See id.* at 10.

The Secretary's investigation substantiated Ellis's second and third allegations but revealed the first allegation to be inaccurate. Specifically, she found that an initial, inadvertent double scanning of approximately 8,000 ballots had been detected quickly and was immediately rectified. *See* Supp. Stmt. at 12. Thus the Secretary concluded that the final count did not include any double counting of votes.

As the Supplemental Statement of Reasons illustrates, the Secretary's investigation obtained facts regarding the double counting from numerous individuals with direct knowledge of the tallying process.

Her conclusion is thus plausibly based on facts gathered in her investigation and her decision to dismiss that allegation as inaccurate is therefore neither arbitrary nor capricious.

## C. The Secretary's Determinations as to the Sufficiency of Substantiated Allegations

As discussed above, the Secretary substantiated, in whole or in part, five of the 16 allegations of misconduct or errors that Ellis maintained. Those allegations fall into four categories: (1) restriction of observer access at the tallying site, (2) use of CSEA staff members to assist in the vote tally, (3) scanning of approximately 2,500 ballots that lacked signatures or identification numbers, and (4) large fluctuations in the vote counts between the initial projections and the final tally. The Secretary concluded that it was improbable that any of those instances of misconduct or error could have affected the outcome of the election. This Court will address in turn the adequacy of the reasons for her conclusions as to each substantiated allegation.

First, the Secretary's investigation corroborated Ellis's allegation that observers at the tallying site were confined to "one area cordoned off for the observers," which made it impossible for the observers to see the work taking place in the room and effectively "denied the candidates the right to observe the election." *See* Supp. Stmt. at 9. Furthermore, she explained that her investigators' interviews with observers revealed that employees of True Ballot and staff of the CSEA election committee also failed to answer some questions from the observers promptly. *See id.* at 9–10. According to the Secretary, those violations led her investigators to conduct a close review of the election records, extensive interviews with observers

and staff, as well as an independent hand count of all returned ballots.

As the result of her investigation, the Secretary found that the number of ballots tallied and counted by True Ballot was nearly identical to the result of her investigators independent hand count. *See* Supp. Stmt. at 12. Furthermore, interviews also showed that even if the observers had had full access, the use of high-speed, automatic tallying machines made it impossible for them to assess the accuracy of the initial tally. *See id.* at 11. Thus, the Secretary concluded that the restriction of observers' access did not materially affect the tallying process. She also noted that any fraudulent tallying activity would have been revealed in a discrepancy in the final vote count. Thus, she concluded that no such misconduct had taken place. In addition, in light of the margin of Donohue's victory, the Secretary also concluded that any minor error could not have affected the outcome of the election.

Plaintiff correctly observes that the text of the LMRDA and its regulations reflects a clear legislative mandate to protect observers' rights in labor union elections in order to ensure union democracy. Thus, he urges this Court to disregard the Secretary's conclusion and to hold that legislative intent as sufficient support for the conclusion that the limitations on observers' rights might have affected the outcome of the election. However, this argument conflates two distinct inquiries: the extent of protection for observers' rights and the actual consequences of restriction of such rights for the integrity of a union election. *See Donovan v. Local 6, Washington Teachers' Union,* 747 F.2d 711, 717–18 (D.C.Cir.1984) (upholding the Secretary of Labor's discretion to conclude that, based on his independent investigation, allegations of restrictions on observers' rights "could not have affected the outcome of the election"). Because the Secretary has offered several independent reasons, based on facts uncovered in her investigation, for precluding the possibility that the restriction of observers' rights caused any material error or misconduct that might have affected the election's outcome, her conclusion is rational and neither arbitrary nor capricious.

Second, the Secretary's investigation corroborated Ellis's allegation regarding the use of CSEA staff members in the tally. Specifically, the contract between CSEA and True Ballot stipulated the union staff, instead of unaffiliated, temporary employees, would be provided to assist True Ballot with the tally. She also found that the names of those CSEA staff members had never been provided to True Ballot. However, her investigators' interviews with True Ballot employees and members of the CSEA election committee revealed that the CSEA staff members were always under the supervision of the election committee during the tally. *See* Supp. Stmt. at 13. Interviews with observers also did not uncover any indication of misconduct or tampering. *See id.*

Thus, the Secretary concluded that the inclusion of CSEA staff in the vote tallying process did not result in a violation of LMRDA. Ellis asserts that the CSEA staff members were largely unsupervised when they participated in the tally and that that lack of oversight could have affected the outcome of the election. However, although the Secretary has not identified the precise basis for her conclusion as to why the use of CSEA staff could not have affected the election outcome, the totality of facts presented in the Supplemental Statement of Reasons makes it clear that her investigation revealed adequate supervision of those staff members during the tally. Moreover, in light of both Donohue's sizable margin of victory

and the Secretary's findings as to the overall integrity of the tally, it is reasonable to infer that any possible procedural errors would have been minor and could not have affected the election outcome. Accordingly, the Secretary's decision not to initiate suit on the basis of the participation of CSEA staff members in the tally is rational and neither arbitrary nor capricious.

Third, the Secretary's investigation corroborated Ellis's allegation regarding the inclusion of more than 2,000 returned ballots, which could not be properly authenticated, in an initial scanning. Department of Labor investigators further found that the election committee, out of concern for protest from the CSEA membership, decided to scan approximately 2,500 of those ballots that contained a vote. *See* Supp. Stmt. at 12–13. However, interviews with True Ballot employees and with members of the election committee, in addition to the Secretary's investigators' independent hand count, showed that those votes were never tallied. *See id.* Thus, those votes were not included in the final count.

The Secretary concluded that those actions did not amount to a violation of the LMRDA. She considered two possible LMRDA violations—the initial scanning of the ballots and their subsequent exclusion from the tally. Because the ballots that had been initially scanned were never tallied, they could not have affected the election outcome. Moreover, she found that because the exclusion of ballots was due to their lack of proper authentication and because their exclusion was carried out in a consistent, rather than discriminatory, manner, that procedure was also not in violation of the LMRDA and could not have affected the election outcome.

Ellis contends that the Secretary's failure to conduct an independent tally of the votes obligates her to conclude that the exclusion of more than 2,000 ballots "may have affected the outcome of the election." *See* Declaration in Support of Plaintiff's Motion for Summary Judgment at 7–8. While an independent tally would have undoubtedly been helpful, this Court must defer to the Secretary's choice to rely on interviews and other alternative investigative methods. *See Dunlop,* 421 U.S. at 572–73, 95 S.Ct. 1851. Because her conclusion that the exclusion of certain ballots is reasonably based on her factual findings regarding Donohue's substantial margin of victory, the legitimate purpose of excluding those ballots, and the consistent manner in which their exclusion had been carried out, this Court concludes that the Secretary's decision is rational and neither arbitrary nor capricious.

Finally, the Secretary's investigation corroborated Ellis's allegation regarding the fluctuation in the projections of the number of votes each candidate for statewide presidency received. Specifically, interviews with observers revealed that on February 9, monitors in the tallying room showed that Ellis would receive approximately 15,800 votes and Donohue would receive approximately 22,000 votes. *See* Supp. Stmt. at 14. The final, audited results, however, were 13,707 votes for Ellis and 19,061 votes for Donohue.

The Secretary's investigation revealed that a discrepancy between the printed format of the ballots and the design of the scanning machines resulted in the problem of "box drift," i.e. some images were scanned and recorded twice while others were not scanned or recorded at all. The Secretary's investigators interviewed members of the election committee and True Ballot employees, as well as the observers, to ascertain that the "box drift" problem had been adequately corrected by erasing the original records and re-scanning the images. *See* Supp. Stmt. at 13–14. Thus, although the Secretary did not

conduct an independent tally of the more than 38,000 ballots, *see id.* at 14, she concluded that the election staff provided a convincing explanation for the discrepancy between the initial projections and the audited final tally and that an adequate effort was made to remedy that error.

The Secretary's determinations as to the error and the remedy in the vote tallying process are highly plausible. Furthermore, considering the consistency of the margin of victory in the initial projections and the final audited result, it was reasonable for her to conclude that the discrepancy between the initial projection and the final audited result could not have affected the outcome of the election. Accordingly, the Secretary's decision not to initiate suit based on the discrepancy between the initial projections and the final vote tally is reasonable and neither arbitrary nor capricious.

## IV. CONCLUSION

For the reasons set forth above, this Court finds that the Secretary's decision to dismiss plaintiff's administrative complaint instead of initiating a civil suit to challenge the February 2000 CSEA election was not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *See Dunlop*, 421 U.S. at 565–6, 95 S.Ct. 1851 (citing the standard of review delineated in 5 U.S.C. § 706(2)(a)). Accordingly, the Secretary's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.